IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE **DIVISION**
**CIVIL ACTION NO.** 3:15-CV-00360-GCM

| | |
|---|---|
| JAYME REBECCA GOBLE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TELCOM COMMUNITY CREDIT UNION, ) | |
| THE FAIRVILLE COMPANY, LP, ) | |
| EQUIFAX INFORMATION SERVICES, ) | |
| LLC, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant Fairville Company's Motion for Summary Judgment (Doc. No. 46) and Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 50). Replies were due by January 10, 2017 and none were filed.

**I.    Background**

In May, 2006, Plaintiff, and her husband, Anthony Goble, who is not a party, obtained a 39 month installment loan from Fairville to purchase a used 2002 Freightliner TI20664 ST Tractor. The first payment was due July 1, 2006, with monthly payments due on the first day of each month thereafter. As early as September, 2006, her loan was delinquent with a first payment default, and the truck was uninsured. The truck was secured on September 27, 2006 and sold shortly thereafter, leaving a balance due of $46,983. (Maxton Decl. Ex. A at 148). Fairville furnished this information to Equifax in 2006.

1

Plaintiff and her husband filed a joint bankruptcy petition on December 10, 2007, in the Bankruptcy Court for the Western District of North Carolina, No. 07-51158. (Def. Ex. 2). Plaintiff's Petition scheduled the Fairville deficiency balance as an undisputed unsecured debt, along with approximately 54 other outstanding unsecured debts, totaling $133,893.02. By letter dated April 14, 2013, Plaintiff notified Equifax that her debt to Fairville had been discharged in bankruptcy and requested that Equifax properly note a zero ($0) balance. (Def. Ex. 3).

Equifax's records indicate that on July 22, 2013, it received a letter dated July 15, 2013, from Gourley and Gourley, P.A., advising Equifax of errors in Plaintiff's credit report. (Munson Decl. Ex. B). That letter states: "Pursuant to the Fair Credit Reporting Act…we specifically request that the [Fairville] account trade lines be modified permanently to reflect (1) Account Balance of $0 (2) Discharged in Bankruptcy." An internal Equifax "maintenance sheet" dated July 23, 2013 shows that the Fairville account was updated to show that it was "included in bankruptcy." (Munson Decl. Ex. B).

On November 7, 2013, Plaintiff sent a certified letter to Equifax and asked that Equifax "update the subject credit file(s) to reflect the discharged status of the debts." The letter disputes "the extent any of the discharged debts are reporting anything other than a '0' balance." (Def. Ex. 10).

On April 5, 2014, Plaintiff submitted an online dispute to Equifax regarding the Fairville account to "verify the account descriptions shown on [her Fairville] account." (Def. Ex. 15).

On June 8, 2014 Plaintiff mailed a letter to Equifax disputing the Fairville account reporting balance of $46,983 and amount past due of $45,539, and advising they both needed to be corrected to show a Zero ($0) balance. This letter was received by Equifax June 14, 2014.

(Munson Decl. Ex. D). On, June 23, 2014, Equifax sent an automatic credit dispute verification form ("ACDV") to CSC Logic[1] ("CSC") using the e-OSCAR system, notifying CSC of Plaintiff's dispute regarding the Fairville account information. (Evans Decl. ¶ 5). A copy of the ACDV produced by Equifax lists the date as June 23, 2014. (Munson Decl. Ex. C). CSC served a response to this ACDV on or about June 24, 2014. (*Id.* ¶ 6, Ex. B). Fairville has produced a draft of this response that was provided by CSC, indicating that it had updated Plaintiff's account to reflect a balance of $0 and an amount past due of $0 (Maxton Decl. Ex. C). The copy of the ACDV produced by Equifax includes CSC's response, reflecting that the balance had been updated to $0 and that the account had been listed as closed (Munson Decl. Ex. C).

Plaintiff filed a complaint against Fairville Company, LP ("Fairville"), Equifax Information Services, LLC ("Equifax"), and Telco Community Credit Union ("Telco"), in this Court on August 7, 2015. (Doc. No. 1) In it, she alleged violations of the Fair Credit Reporting Act and North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). (*Id.* at 7-17, ¶¶ 92-111). During the discovery period, Plaintiff signed confidential settlement agreements with Equifax and Telco and agreed to dismiss her claims against them with prejudice. (Response in Opposition at 2-3, Doc. No. 37; Joint Motion to Dismiss with Prejudice, Doc. No. 30; Stipulation of Dismissal with Prejudice, Doc. No. 38).

So, at this point what remains is Plaintiff's claims against Fairville for (1) violations of the Fair Credit Reporting Act and (2) violations of UDTPA. Fairville has filed a motion for summary judgment for both of these claims.

---

[1] Fairville's administrative functions, including furnishing of credit information, are outsourced to CSC, which administers all account payments for Fairville's loan portfolio. (Doc. No. 46-1 at 2).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## III. Analysis

Defendant seeks to dismiss Plaintiff's FCRA claim, because she fails to plead the requisite facts to trigger a private right of action pursuant to 15 U.S.C. § 1681s-2(b). Plaintiff alleges Fairville is a furnisher of credit information pursuant to the FCRA. Compl. ¶ 9. Pursuant to the FCRA's statutory scheme, the obligations of data furnishers are set forth in 15 U.S.C. § 1681s–2. Accordingly, Congress only authorizes a consumer to bring a private action against a data furnisher for alleged violations of the enumerated duties in § 1681s–2. *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 782 (W.D. Ky. 2003).

The FCRA provides that upon receiving a dispute of accuracy from a credit reporting agency ("CRA"), a data furnisher is obligated to conduct a reasonable investigation of the dispute, report its results to the credit reporting agency, and modify or delete incorrect information. *See* 15 U.S.C. § 1681s–2(b). "Courts have consistently held that for the duty imposed by § 1681s–2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from a consumer." *White v. Fannie Mae*, No. CIV.A. 1:13-29923, 2014 WL 5442970, at *6 (S.D.W. Va. Oct. 24, 2014) (quoting *Peasley v. Version Wireless LLC*, 364 F.Supp.2d 1198, 1200 (S.D. Cal. 2005); *Mavilla v. Absolute Collection Serv., Inc.*, 539 Fed.Appx. 202, 208 (4th Cir. 2013)). Plaintiff appears to argue that this prior precedent is unfair to the Plaintiff and evidence of the Plaintiff noticing the Defendant should be sufficient to provide standing. The Court declines to go against past precedent, which it cited to as recently as August 2016. *See, Rich v. Stern & Associates, P.A.* 2016 WL 4480695.

Only after this notice requirement is met would Plaintiff have standing to bring a claim under § 1681s–2(b) against a data furnisher that allegedly failed to make a reasonable investigation. *Beattie v. Nations Credit Fin. Services Corp.*, 65 Fed. Appx. 893, 899 (4th Cir. 2003) (citing *Carney v. Experian Info. Solutions, Inc.*, 57 F.Supp.2d 496, 502 (W.D. Tenn. 1999) ("...statutorily created obligation imposed on a furnisher of information is owed only to the consumer reporting agency and not to the consumer, and an individual such as plaintiff cannot state a claim under 15 U.S.C. § 1681s–2(b)")).

Plaintiff states that throughout the discovery proceedings, she has "attempted to obtain evidence that demonstrated that the Defendant received notice of the Plaintiff's dispute from

either Equifax or Experian." (Doc. No. 50 at 3). This is clear from the records. However, it is equally clear that Plaintiff has failed to obtain such evidence. As detailed above, Plaintiff has produced evidence of the following communications sent to Equifax in which Plaintiff disputed the Fairville account information appearing on her credit report: (1) the July 15, 2013 letter from her bankruptcy attorney; (2) the November 7, 2013 certified letter; (3) the April 5, 2014 online dispute; and (4) the June 8, 2014 letter. However, there is no evidence that Equifax ever notified Fairville of the three earlier disputes. Fairville has produced no record of a dispute notice from 2013 or any time prior to June 2014, which is consistent with the ACDV produced by Equifax which shows notice of a dispute being sent in June. (Munson Decl. Ex. C; Evans Decl. ¶ 5). And there is no claim that Fairville did not conduct a reasonable investigation into the claim after the June 2014 notification.

The only evidence Plaintiff cites in her memorandum that Fairville was notified by a credit reporting agency prior to June 2014 is section of the transcript of the deposition of the Defendant's witness designated under Fed. R. Civ. P. 30(b)(6) where the witness says she does not know several facts including the "maximum length of a Chapter 13 bankruptcy" and whether the Defendant checked the PACER system for the Plaintiff's bankruptcy. (Doc. No.50 at 3-4). Clearly, Plaintiff failed to produce even a "scintilla" of evidence that Fairville received notice from a credit reporting agency prior to the June 2014 notice, but failed to investigate and update her account information, much less evidence that would warrant a trial. Plaintiff's continued assertions that Fairville received notice prior to June 2014 amount to nothing more than speculation. Therefore, Defendant is entitled to summary judgment on Plaintiff's FCRA claim.

Defendant also seeks to dismiss the claim alleging a violation of North Carolina's UDTPA. Plaintiff claims that Fairville published "false information about alleged debts"

6

(Compl. ¶ 104) and thereby violated the NCUTPA, which prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75–1.1(a). However, the FCRA's express preemption provision, 15 U.S.C. § 1681t(b)(1)(F), preempts this state law claim, regardless of its underlying merits.[2] *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010); *See Rich*, 2016 WL 4480695.

In *Ross v. FDIC*, the Fourth Circuit held the plaintiff's NCUTPA claim under § 75–1.1 ran "into the teeth of the FCRA preemption provision" because the claim concerned the defendant's reporting of inaccurate credit information to the CRAs. *Ross*, 625 F.3d at 813. The court found the plaintiff's NCUTPA claim sought to use § 75–1.1 as a requirement or prohibition under North Carolina law over subject matter regulated in great detail by FCRA § 1681s–2, and therefore the NCUTPA claim was "squarely preempted by the plain language of the FCRA." *Id.*

Plaintiff argues that her UTPA claim falls within the exemption to the FCRA preemption. The *Ross* court recognized that there may be a limited exception from preemption if (1) the claim falls within the scope of 18 U.S.C. § 1681h(e); and (2) the defendant had "malice or willful intent to injure." *Id.* at 813–14. For a claim to fall within the scope of Section 1681h(e), Plaintiff must show that her action is based on information disclosed by a credit reporting agency or information disclosed by a user of a consumer report who took adverse action based on the report. *Id.* at 814. Furnishers of consumer information do not fall within the scope of § 1681h(e). *See e.g. Edwards v. Santander Consumer USA, Inc.*, 2011 WL 2457498 at *4 (E.D.N.C. June 15,

---

[2] Congress amended the FCRA with the Consumer Credit Reporting Reform Act of 1996 ("CCRRA") which added a strong preemption provision:
> No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under ... (F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies ....

15 U.S.C. § 1681t(b)(1)(F).

7

2011) ("The allegations necessary to plead furnisher liability under the FCRA preclude the claim from falling within the scope of section 1681h(e)."). Because Plaintiff only alleges that Fairville is a furnisher of information, her claim does not fall under § 1681h(e) and does not meet the first requirement to be excepted from preemption.

Plaintiff's UDTPA claim is preempted by the FCRA and accordingly Fairville is entitled to summary judgment on the claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgement is hereby **GRANTED**. The clerk of court is directed to close this civil case.

Signed: March 7, 2017

Graham C. Mullen
United States District Judge